OPINION OF THE COURT
David B. Saxe, J.
The plaintiff husband in this matrimonial action now moves for an order directing that the marital residence, a cooperative apartment on Park Avenue, be immediately offered for sale. He contends that otherwise a waste of marital assets will ensue since (1) the defendant moved out as of April 12, 1989 and since the co-op board does not permit subletting, the plaintiff is obliged to continue making maintenance payments *28 of $1,960 per month on an empty apartment, (2) as a result of its remaining empty, the apartment’s physical condition may deteriorate, and (3) a 1% "mansion tax” to become effective on July 1, 1989, while payable by the buyer, may affect the market value of the apartment.
The defendant wife opposes a sale at this time, on the grounds that (1) Stewart v Stewart (118 AD2d 455 [1st Dept 1986]) prohibits a disposition of marital assets prior to final judgment, and (2) newspaper reports state that the capital gains tax rate will in the future be decreased sharply, to approximately 15%.
It is apparent that requiring the marital apartment to remain empty and unsold from now through the time judgment in the matrimonial action is entered will constitute a waste of marital assets, if only because at a minimum, to do so the plaintiff must pay some $2,000 per month as maintenance charges. Nor does a newspaper report containing what is in essence speculation regarding a future drop in the capital gains tax rate convince this court that such tangible waste will be offset by an ultimate gain through the amount the parties will be saved in tax liability.
The critical issue is whether the court is permitted to order such a sale at this juncture.
In Kahn v Kahn (43 NY2d 203 [1977]), the trial court had dismissed the husband’s complaint for a divorce, and granted exclusive possession of the marital residence to the wife; the Appellate Division modified to the extent of ordering the sale of the marital residence (55 AD2d 638). The Court of Appeals reversed so much of the order as directed the sale, holding that "unless a court alters the legal relationship of husband and wife by granting a divorce * * * it has no authority to order the sale of a marital home owned by the parties as tenants by the entirety” (43 NY2d, at 210, supra).
In Stewart v Stewart (118 AD2d 455, supra), another matrimonial action, the marital residence was a cooperative apartment, occupied by the wife and the parties’ child. Following the husand’s default on the loan note, the mortgagee allegedly indicated an intent to foreclose on the apartment; the husband moved, in the matrimonial action, for an order permitting him to hold a private sale of the apartment and enjoining any foreclosure sale; in support of his motion, the husband *29 took the position that he could get a better price in a private sale. The motion was granted, and on appeal, the First Department reversed, for two reasons. Primarily, it noted that the court was not empowered to enjoin a third party from exercising its rights in the absence of a proper motion for a preliminary injunction pursuant to CPLR article 63 (Stewart v Stewart, 118 AD2d, at 456, supra).
In addition, however, the court in Stewart relied on the ruling in Kahn v Kahn (supra) that a court lacks authority to order the sale of a marital home owned by the parties as tenants by the entirety, absent a judgment of divorce, separation, or annulment — notwithstanding the court’s observation that ownership of shares allocated to a cooperative apartment is probably not amenable to tenancy by the entirety (Stewart v Stewart, supra, at 457). From this part of the decision, it would appear at first glance that the rule enunciated in Kahn must be extended to shares allocable to cooperative apartments as well as to residences owned by the entirety. However, I conclude that, under the circumstances presented here, the Kahn case does not require that court-ordered sale of the parties’ apartment be delayed until final judgment.
It is noteworthy that in both Stewart and Kahn (supra), the residence in issue was occupied by one of the parties, and the contemplated sale was intended to raise cash to pay the parties’ current expenses. A concern implicit in those cases was that a spouse in current possession of the residence would be deprived of his or her right to occupancy.
Here, the movant seeks merely to avoid the waste of many thousands of dollars, and seeks only that the purchase money be placed in escrow pending any distribution of marital assets. Mrs. Gordon never suggests that she plans to move back into the apartment. Under such circumstances, I am in accord with the reasoning that such a sale is not a disposition of the residence, but rather merely a "transformation of the asset * * * so as to preserve it” (see, Klien v Klien, NYLJ, Feb. 21, 1989, at 21, col 5, at 26, col 4 [Sup Ct, Kings County 1989]). Since here the asset cannot be owned by the entirety, changing the form it takes — i.e., from shares of stock to cash — does not prejudice the parties since no right of survivorship is affected as it would be in a sale of a marital residence owned by the entirety.
*30 Moreover, I note that where the parties have more than one marital residence, a court-ordered sale of such residences prior to trial has not been questioned or challenged (see, e.g., Aldin v Aldin, 149 AD2d 348 [1st Dept 1989]).
Accordingly, the motion is granted, and the plaintiff may place the apartment up for sale immediately.